[Civ. No. 23487. Second Dist., Div. One. July 1, 1959.]

NICK W. PATAPOFF et al., Appellants, v. CITY OF LOS ANGELES et al., Defendants; DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS ANGELES, Respondent.

Youngblood & Gross for Appellants.

Roger Arnebergh, City Attorney, Gilmore Tillman, Chief Assistant City Attorney for Water and Power, O. M. Lloyd and George K. Whitworth, Deputy City Attorneys, for Respondent.

WHITE, P. J.—Plaintiffs Nick W. Patapoff and June Patapoff, husband and wife, appeal from a minute order dated May 19, 1958, entered May 21, 1958, reading as follows: "Nature of Proceedings: Motion of Defendant, Department of Water and Power of the City of Los Angeles, to dismiss action pursuant to provisions of Section 583 of the Code of Civil Procedure. Motion Granted." Walter C. Allen, Judge.

The motion for dismissal was made on each of the following grounds: (1) "For want of prosecution, in that plaintiffs have failed, for more than two years after the action was filed, to bring said action to trial;" and (2) "Said action was not brought to trial within five years after the plaintiffs filed said action."

The record on appeal discloses that said motion, together with a notice that it would be made May 19, 1958, an affidavit of Deputy City Attorney George K. Whitworth, one of the attorneys for defendant Department of Water and Power, in support of said motion, and a memorandum of points and authorities in support thereof, was on May 8, 1958, served by mail on the "Department of Mental Hygiene of the State of California by Gordon Hamilton, as Supervisor of Guardianships, as Guardian ad Litem of said Nick W. Patapoff in the within action, plaintiff in said action" and upon the plaintiffs by mailing a copy of said papers addressed to Attorneys N. E. Youngblood and Marvin Gross, who, on July 19, 1957, at the request of the Department of Mental Hygiene and upon the

signed statement of Nick W. Patapoff and June Patapoff, had been substituted as plaintiffs' attorneys "in the place and stead of Nick W. Patapoff in propria persona."

Because of appellants' contention that the trial of action Number 600463, entitled *W. N. Schworer et ux.*, v. *Nick W. Patapoff et ux.*, consolidated with the instant action for the purpose of trial on May 4, 1954, was a partial trial of the instant action, and respondent's insistence that "no issue of fact" in the instant action has been tried, we have carefully examined the entire record on appeal for the purpose of determining what were the issues in the instant action, Number 612867.

The record includes a copy of the original "Complaint for Property Damage and Trespass" filed April 22, 1953, but no copy of the amended complaint referred to in the joint statement for pretrial, and no copy of any answer, although the pretrial conference order, dated April 23, 1958, states that "the pleadings are sufficient and the parties are ready for trial."

From the minute orders included in the record, it appears that, on May 4, 1954, upon motion of W. N. Schworer et ux., defendants in the instant action and plaintiffs in said action Number 600463, the actions were consolidated for trial and transferred by Judge Richards from Department 1 to Department 24; and that on the same day, in the presence of attorneys for all parties to both actions, in Department 24, Judge Robert Scott stated that "the above actions heretofore consolidated for trial and transferred from Department One are called for trial (listing attorneys for all parties to both actions as present). The Court declares that the two actions will not be tried together, and that action #600463 will be tried first and when completed, the trial of Action #612867 will proceed. It is stipulated that the description of the property set forth in the complaint in action #600463 is the correct description . . ."

May 5, 1954, the two actions were transferred to Department One because of the desire of Nick W. Patapoff to change his lawyer and his claim that "he is not ready for trial, either with his attorney Jesse Bach Porter, or otherwise."

On the same day, in Department One, the instant action "Consolidated with 600463" was continued to July 22, 1954, "due to congested calendar."

July 22, 1954, "on motion of defendant," plaintiff Patapoff appearing "pro. per.," the instant action (consolidated with 600463) was continued to November 17, 1954.

Notice signed by Attorney Whitworth to the effect that trial "will be had" on November 17, 1954, was served personally upon Nick W. Patapoff and June Patapoff on July 28, 1954. On the same day, served upon said plaintiffs at the same time, was Attorney Whitworth's "Notice Requiring Plaintiffs to Appoint an Attorney or to Appear in Person," reciting as the reason for such requirement that Jesse Bach Porter "by order of Court heretofore was permitted to withdraw and did withdraw from the case and has ceased to act as your attorney herein."

November 17, 1954, the instant action ("Counsel for Plaintiff: Jesse Bach Porter") (Consolidated with 600463) "on motion of plaintiff" was continued to March 7, 1955.

December 2, 1954, Attorney Whitworth's "Notice Requiring Plaintiffs to Appoint an Attorney or to Appear in Person" and his "Notice of New Trial Date" for trial on March 7, 1955, was served upon said plaintiffs Patapoff.

The minutes of Department 6, on March 8, 1955, Honorable John Gee Clark, Judge, show the following proceedings were had in actions 600463 and 612867.

"Causes consolidated for trial are transferred from Department One" (listing attorneys appearing for other parties to both actions, "Nick W. Patapoff appears in propria persona as defendant in 600463, and as plaintiff and cross-defendant in 612867," and showing no appearance for or by June Patapoff in either case). "The court announces that the order of trial will be to proceed on 600463 first, and Nick W. Patapoff is affirmed and testifies, and William J. Schworer is sworn and testifies, both for plaintiffs and cross-defendants; Nick W. Patapoff testifies in his own behalf." Plaintiffs' exhibits were received in evidence; defendants' exhibit marked for identification only. "Both parties rest. The court declares that Patapoff is owner of $\frac{1}{4}$ interest in the property, subject to a lien of $1705.92 in favor of Schworer. Certain matters then coming to the attention of the court, the court declares a MISTRIAL as to 600463, and appoints the Department of Mental Hygiene—Gordon Hamilton as Supervisor of Guardianships as Guardian ad Litem of Nick W. Patapoff, pursuant to Welfare and Institution Code Section 6660, and the cause is continued to May 2, 1955 at 10:00 a. m., for the

purpose of permitting the Guardian herein appointed to take such steps as may be necessary. The exhibits introduced are ordered to be returned to the party who produced them, and plaintiffs' exhibits are all returned to James B Ogg, counsel; the defendants' exhibit A, marked for identification only, is ordered turned over to the Guardian ad Litem herein appointed.

"As to 612867, the court makes the same appointment, namely, the Department of Mental Hygiene—Gordon Hamilton as Supervisor of Guardianships, as Guardian ad Litem of Nick W. Patapoff, and the cause is ordered off calendar, subject to being re-set on 30-days' notice. A copy of these minutes is to be sent to the Department of Mental Hygiene, 1320 K Street, Sacramento, California."

December 10, 1957, at the first appearance of plaintiffs Patapoff by their Attorneys Youngblood and Gross, Judge Kincaid set the instant action alone for pretrial conference on April 17, 1958, and for trial May 20, 1958.

May 8, 1958, in addition to the notice of motion for dismissal, affidavit and authorities in support of that motion, there were likewise served upon said guardian *ad litem* and attorneys for the plaintiffs the following papers: Notice of Motion to Amend pretrial conference order, points and authorities, affidavit, and motion to amend nunc pro tunc pretrial conference order.

The amendments to said pretrial conference order sought by defendants included the striking of the second sentence from the following paragraph thereof: "It is impossible to bring this case to trial within a period of five years after the filing of the complaint on the 22nd day of April, 1953. However trial was commenced on two prior occasions, indicating that the effect of Section 583 of the C.C.P. has been tolled."

The other amendment to said pretrial conference order also sought "for the purpose of correcting clerical errors therein" consisted of the addition thereto of the following paragraphs: "By order of Court herein made March 8, 1955, the Department of Mental Hygiene of the State of California, by Gordon Hamilton as Supervisor of Guardianships, was appointed Guardian ad Litem herein of Nick W. Patapoff, one of the plaintiffs in this action, which said appointment has not since been revoked and still continues in full force and effect.

"It is hereby ordered that the entitlement of the within action shall be amended nunc pro tunc March 8, 1955, by

striking the name 'Nick W. Patapoff' as a party plaintiff herein and substituting therefor 'Nick W. Patapoff by Department of Mental Hygiene of the State of California, by Gordon Hamilton as Supervisor of Guardianships, his Guardian ad Litem' and the clerk of said Court is hereby ordered to amend the entitlement of the within action upon the records and files of this Court accordingly.''

The affidavit of George K. Whitworth in support of defendant's motion to amend pretrial conference order is as follows: "That at all times herein mentioned he has been and now is one of the attorneys of record for defendant Department of Water and Power of The City of Los Angeles in the above entitled action. That said action has not heretofore been brought to trial, that is to say, that the trial of any question of fact therein has not heretofore been had or commenced and that there has not been any partial trial of any question of fact. That said action is one to recover damages for trespass and one of the issues raised by the pleadings was the extent of plaintiffs' interest in the subject property which issue was already the subject of a pending quiet title action (*W. J. Schworer et al., Plaintiffs,* v. *Nick W. Patapoff et al., Defendants,* civil action No. 600463 in the above entitled court and county) between said W. J. Schworer et ux., two of the defendants in this action, and said Nick W. Patapoff et ux., the plaintiffs in this action. That in order to assure that plaintiffs' title would be determined in the prior action (No. 600463) before this action (No. 612867) should come to trial, the said defendants W. J. Schworer et ux., by their attorney James B. Ogg, moved that the two actions be 'consolidated' for trial, which motion was granted May 4, 1954 as appears by the minute order of that date in the file. That said actions were not in fact 'consolidated' for trial, for on each of the two occasions, to wit, the first on May 4, 1954 and the second on March 8, 1955, the Court declared, as appears by the minute order made on each occasion, that the two actions would not be tried together but that the quiet title action, No. 600463, would be tried first and when the trial thereof was completed that the within action, No. 612867, would be tried. That all proceedings heretofore had by way of trial of said action No. 600463 pertained to that action alone and none of the testimony adduced nor exhibits offered in any trial of that action were in anywise made applicable to this action, No. 612867.''

Attached to, and by reference made a part of, said pretrial

conference order dated April 23, 1958, signed by Judge Irwin, is a joint statement for pretrial, dated November 8, 1957, signed by Attorneys Gross and Whitworth for their respective clients, from which we quote the following excerpts:

"2. . . . the issue as to title having been determined in another action (Sup. Ct. No. 600463), this action as to them (defendants other than the Department of Water and Power) may be dismissed. . . .

". . . . . . . . . . . . .

"5. At the times the acts complained of were committed, insofar as they were committed, that is, during the months of January and March 1952, the plaintiffs were the owners of only an undivided one-fourth interest in said Parcels 1 and 2, and never thereafter acquired or owned any greater right or interest in any of said parcels. . . Plaintiffs ceased to be the owners of any interest in said Parcels 1 and 2 upon the sale of said parcels made pursuant to order of Court in said action No. 600463 . . . and their entire interest in Parcel 3 was terminated on or about the 13th day of November, 1953. . . .

"6. If the plaintiffs be entitled to recover in this action for any of the damage complained of, the amount of their recovery as to Parcels 1 and 2 is not to exceed one-fourth of the total damage to those parcels, and the amount of their recovery as to Parcel 3 is not to exceed one-half of the total damage to that parcel."

Said pretrial statement further indicates that said Parcel 1 along its westerly boundary is contiguous to the Department's electric transmission line right of way, 160 feet in width, over which it maintains a high-tension steel tower double circuit electric transmission line; that one of its steel towers is approximately 225 feet northerly of the most northerly corner of said Parcel 1 and another about 100 feet westerly from the most westerly corner of said Parcel 1; that during January and March, 1952, without plaintiff's consent and without payment of any compensation to plaintiffs, defendant did enter upon said Parcel 1 with bulldozers and move and displace sand, gravel and rock thereon, and erect thereon an embankment of rock, sand, gravel and detritus.

The pretrial conference order and statement in the instant action is dated April 23, 1958, filed April 30, 1958, and shows a line through the sentence therein which reads as follows: "However trial was commenced on two prior occasions, indicating that the effect of Section 583 of the C.C.P. has been

tolled." Opposite said sentence is the following marginal notation: "A.N.I./J. on motion 5/19/1958." The record on appeal includes no other indication that the motion for amendment of the pretrial conference order was actually made.

"When filed, the pretrial conference order becomes part of the record in the case, and, where inconsistent with the pleadings, controls the subsequent course of the case." (48 Cal.Jur. 2d 98; rule 8.8, Rules For The Superior Courts, 47 Cal.2d 7.) "A pre-trial conference order, and any proceeding to correct or modify such order, may be reviewed on appeal from a final judgment in the case." (Rule 8.10.)

Relevant to appellants' contention that the trial of Action Number 600463 was a partial trial of the instant action are the following portions of the record on the appeal now engaging our attention:

(1) "Joint Statement for Pre-Trial" signed by Gross and Whitworth, as counsel for Patapoff, and the Department of Water and Power, respectively, and forming a part of the Pre-Trial Order in the instant action, wherein it is said that, the issue of title having been determined in Action No. 600463, plaintiffs' interest in the real property involved at the time of the commission of the acts of trespass complained of and thereafter until terminated by court sale of Parcels 1 and 2 in said Action No. 600463 and a trustee's sale of Parcel 3, was one-fourth of Parcels 1 and 2 and one-half of Parcel 3, and, if appellants are entitled to recover for damages to those properties, any judgment in their favor shall be limited to those fractions of the amounts of damages found to have been caused to the respective parcels;

(2) The order of Judge Richards in Department One on May 4, 1954, that the two cases be consolidated for trial;

(3) The order made in Department 24 on the same date by Judge Scott "that action #600463 will be tried first and when completed, the trial of Action #612867 will proceed;

(4) The fact that the two actions were carried in the court records as consolidated for trial from May 4, 1954 to and including March 8, 1955, when, in Department 6, Judge John Gee Clark again called the two actions for trial;

(5) Judge Clark's announcement on March 8, 1955, "that the order of trial will be to proceed on 600463 first," the completion of the trial of 600463, his decision as to Patapoff's ownership of a one-fourth interest in Parcels 1 and 2 of the real property involved in both cases, after which he stated that

''certain matters then coming to the attention of the court, the court declares a mistrial as to 600463,'' appointed a guardian ad litem in action 600463 for Patapoff, continued that action to a date certain for trial, appointed the same guardian ad litem in the instant action, 612867, for Patapoff, and ordered the instant action off calendar to be reset for trial; and

(6) The statement made by Attorney Whitworth in his affidavit in support of the Department's motion to amend the pretrial conference order that ''one of the issues raised by the pleadings (in the instant action) was the extent of plaintiffs' interest in the subject property which issue was already the subject of a pending quiet title action (600463) . . .''

■ The California Supreme Court, in the *Tregambo* case, next herein cited, said that ''When a court hears and determines any issue of fact or of law for the purpose of determining the rights of the parties, it may be considered a trial.'' (*Tregambo* v. *Comanche M. & M. Co.*, 57 Cal. 501, 505; *Smith* v. *City of Los Angeles*, 84 Cal.App.2d 297, 301-302 [190 P.2d 943]; *Bice* v. *Stevens*, 129 Cal.App.2d 342, 353 [277 P.2d 106].)

One of the issues to be proved in an action for trespass and damage to real property is the interest of the plaintiff in that property. Consequently, the determination in Action 600463 of the extent of the interest of Patapoff in the real property involved in both actions constituted a partial trial of the instant action, ''indicating that the effect of section 583 of the Code of Civil Procedure has been tolled,'' as stated by Judge Irwin in the pretrial order before its amendment. (*City of Los Angeles* v. *Superior Court*, 15 Cal.2d 16, 18, 20-21 [98 P.2d 207]; *Krasnow* v. *Superior Court*, 15 Cal.App.2d 141 [59 P.2d 442]; *Clements* v. *Ragghianti*, 155 Cal.App.2d 188, 190-191 [317 P.2d 706].)

■ While it has long been the law of this state that the court, either upon motion of defendant or upon its own motion, is required by the provisions of section 583 of the Code of Civil Procedure to dismiss actions not brought to trial within five years after the filing of the complaint therein, there are certain well recognized exceptions. Those exceptions have been determined by the courts from time to time on the basis of the intention of the Legislature when enacting that statute.

■ The intention was obviously to prevent unnecessary and unfair delays on the part of plaintiffs. Unquestionably such delays could seriously prejudice defendants by making it difficult for them to produce witnesses, and even documents, which

were easily available during the first few years of the pendency of the action.

The statute's requirement that the duration of the defendant's absence from the state or concealment therein to avoid service is to be excluded from the statutory period warranting or requiring such dismissal, the provision that by written agreement of the parties the action may be tried after the end of such period prevents such dismissal, the court decisions that the unfair conduct of a defendant which misleads plaintiff to his prejudice may prevent such dismissal, that a partial trial of an action within the statutory period or the existence of facts, circumstances or conditions making trial of an action impossible or impracticable for any appreciable time during the statutory period are exceptions to the operation of said section 583, and indicate that said section 583 and the other statutes and rules of court enacted and enforced to enable the business of the courts to proceed in an orderly manner do not relieve the courts of the obligation to see that plaintiffs, as well as defendants, are fairly treated.

From the record and briefs in the instant appeal, it appears that the Patapoffs owned real property, concerning which they were defendants in Action 600463 instituted by the Schworers; that the Department of Water and Power without their consent entered upon their property and built a dike across it; that they brought the instant Action 612867 for damages for trespass; that promptly the instant action had been set for trial, but on the day so set it was consolidated with Action 600463 upon the motion of the Schworers; that when the court had declared that Action 600463 would be tried first and the trial was about to start the Patapoffs and their attorney requested a continuance for the reason that their attorney desired to withdraw and Patapoffs would need time to get another attorney and prepare for the two trials; 10 months and 4 days later, on March 8, 1955, Patapoff appeared in propria persona for the trial of the two cases; the court announced that 600463 would be tried first and then the instant action; Action 600463 was tried, the decision announced, and then a mistrial declared, a guardian *ad litem* appointed for Patapoff in both actions, Action 600463 reset for trial, the instant action ordered off calendar, and the following statement included in the minutes of the court: "A copy of these minutes is to be sent to the Department of Mental Hygiene, 1320 K Street, Sacramento, California." Two years,

4 months and 10 days later, on July 18, 1957, plaintiffs' present attorneys were substituted for plaintiffs in propria persona.

The minutes of the court on March 8, 1955, recite as the reason for the declaration of a mistrial as to Action 600463 and the appointment of a guardian *ad litem* for Patapoff in that action and the instant action "certain matters then coming to the attention of the court." In Patapoff's opening brief it is stated that after the court rendered its decision in Action 600463 on March 8, 1955, the trial court discovered "that plaintiff Nick W. Patapoff, who was appearing in pro per had recently been discharged from a California State Mental Institution," whereupon the court declared the mistrial and appointed a guardian *ad litem* for Patapoff in each of the consolidated cases. It further appears from the affidavit of Attorney Gross in opposition to the motion to dismiss that Patapoff "was and still is an out-patient-ward of the California Department of Mental Hygiene; that on or about July 1, 1957, affiant was requested by the Department of Mental Hygiene to represent plaintiff in this action.

"That one of the administrators of the Department of Mental Hygiene was personally appointed said plaintiff's guardian ad litem so the above case could be reset on calendar and proceed to trial.

"That the trial court ordered this matter off calendar until such time as the Quiet Title Action, No. 600463, could be concluded, thus establishing plaintiffs' interest in the subject property.

"That until said Quiet Title Action was concluded, it was legally futile and impossible for plaintiffs to bring this action to trial again.

"That affiant's file reflects that the original Summons was issued in June, 1953, which is less than five years past; that at the pre-trial hearing in this matter affiant learned for the first time that the complaint had actually been filed on April 22, 1953, which is more than five years past.

"That trial in this matter is set for May 20, 1958 and plaintiffs are ready, willing and able to proceed therewith."

The affidavit of Attorney Whitworth in support of the motion to dismiss contains nothing other than facts stated hereinbefore and shown by the minutes of the court.

Respondent, in its brief, states that "It is respondent's opinion the two actions were not actually susceptible of consolidation, as was ordered in Department One, but the attempted consolidation is of no importance here in view of the

order made in Department 24 immediately thereafter: 'The court declares that the two actions will not be tried together, and that action #600463 will be tried first . . .', which in effect vacated the order of 'consolidation' theretofore made.''

■ Whether or not the two actions were ''susceptible of consolidation,'' according to the record on the instant appeal, the actions seem to have been treated by the superior court as ''consolidated cases'' for a period of 10 months and four days, during which not only were the cases set for trial before the same judge, but the order was that Action 600463 would be tried before the instant Action 612867. Since such orders consolidating cases for trial and regulating the order in which they shall be tried are not appealable orders, it seems highly improbable that the instant action could have been brought to trial during the ten months and four days between May 4, 1954 (the trial date for the instant action procured by Patapoff's then attorney, when the Patapoffs and their attorney were ready for trial until, upon motion of the plaintiffs in Action 600463, the two actions were consolidated and the court ordered that Action 600463 would be tried first) and March 8, 1955 (the trial date set for both actions, when Patapoff appeared in pro. per. and ready for the trial of both actions. Action 600463 was tried, the decision announced, a mistrial declared and a guardian *ad litem* appointed for Patapoff in both cases, a new trial date set for 600463 and the instant action ordered off calendar). We are convinced that that period of ten months and four days must be excluded from the period during which it was practicable to try the instant action.

From the record it appears that the trial judge declared said mistrial and made the appointments of guardian *ad litem* in both cases upon his own motion. (Code Civ. Proc., § 372.) This was his duty if the plaintiff appeared to be incompetent to handle his own affairs. Respondent urges, however, that even though Patapoff had ''recently'' been discharged from the California State Mental Institution and ''was and still is an out-patient-ward of the California Department of Mental Hygiene,'' and ''if legal disability because of mental incompetency were to be presumed to exist from the fact of appointment of the guardian *ad litem*, the appointment of the guardian removed it as a factor in the case and there is nothing to show, or from which it may fairly be inferred, that it existed for even as long as 27 days (the time beyond the five year

period between filing and dismissal) prior to the appointment of the guardian.''

■ While the record on appeal now being considered contains proofs that the department's notices, supporting affidavits and authorities, and motions for amendment of pretrial order and for dismissal were served in May, 1958 upon the guardian *ad litem* of Patapoff, the affidavit of Attorney Gross that he was asked in July, 1957 by the guardian *ad litem* to represent Patapoff, and the statement in the March 8, 1955 minutes of the trial court that ''a copy of these minutes is to be sent to the Department of Mental Hygiene, 1320 K Street, Sacramento, California,'' there is no indication that Gordon Hamilton as Supervisor of Guardianships of said department was notified of his appointment as guardian *ad litem* of Patapoff. However, respondent in its brief states that ''The presumption is, of course, that official duty was regularly performed (Code Civ. Proc., § 1963, subd. 15), and consequently that the guardian was promptly notified. Although the Department of Mental Hygiene or the Supervisor of Guardianships never formally appeared in this action, the notice of motion to dismiss and related papers were served upon that Department. Over three years elapsed after appointment of the guardian ad litem, and over ten months elapsed after the quiet title action was disposed of, before this action was dismissed.''

■ As all departments and levels of government grow and grow, and especially when governmental departments are involved on both sides of a court action, it becomes difficult if not impossible to apply the presumption that ''official duty has been regularly performed.''

■ The record on the instant appeal, which is merely an incomplete clerk's transcript, discloses that the two actions were consolidated by *Judge Richards,* separated by *Judge Scott* who also ordered that Action 600463 which had not theretofore been set for trial be tried first and then continued both actions. *Judge Richards* again set both actions for trial together and instructed the witnesses, and twice more continued said actions for trial together. *Judge Clark* ordered that 600463 be tried first and proceeded to try it, announce his decision, declare a mistrial, appoint a guardian *ad litem* for Patapoff in each action, continue for retrial Action 600463, and order the instant action off calendar. *Judge Kincaid* set the instant action for pretrial and for trial. Judge Irwin acted at the pretrial conference. *Judge Allen* granted the motion

to dismiss from which this appeal was taken. *Judge Irwin,* from the marginal notation appearing on the pretrial order, on the same day as the dismissal, ran the line through the following sentence included in the order made before the five-year period had elapsed: "However, trial was commenced on two prior occasions, indicating that the effect of Section 583 of the C.C.P. has been tolled."

Seven different judges are shown by the record on appeal in the instant action to have participated in some phase of the proceedings therein. The record shows that at least as many different deputy clerks and reporters worked in the case, not to mention the personnel of the clerk's office handling mailing and filing. Where, as here, the minutes of the court state that a copy is to be mailed to the Department of Mental Hygiene at Sacramento, with nothing to indicate who would mail such copy, that it was mailed, or that it was received, it seems far-fetched to presume that the giving of notice of his appointment to the guardian *ad litem* for Patapoff was an official duty regularly performed.

Notwithstanding the department's motion to amend the pretrial order by adding thereto paragraphs changing *nunc pro tunc* as of March 8, 1955, the date of the appointment of said guardian *ad litem,* the title of the action to show that Patapoff was appearing by his guardian *ad litem,* notice to be made on the same day as the department's motion for dismissal, the title of the instant action has not been changed.

Regardless of whether the guardian *ad litem* appointed by the court in the instant action was notified or appeared in the action, and regardless of whether the title of the action shows that Patapoff appears by his guardian *ad litem,* immediately upon his appointment, the control of the action was taken from the hands of Patapoff and given to the guardian *ad litem.* From that time on, the guardian *ad litem* so appointed had exclusive control of Patapoff's participation in the litigation. Assuming that Patapoff appeared to the court to be incompetent to handle his own affairs in the trial of the two actions, one of which 600463 had just been completed and the other, the instant Action 612687, was next, he could not be relied upon to notify the guardian *ad litem* of his appointment and/or to see that his interests were protected by such guardian.

Assuming that the clerk of the court, pursuant to the court's statement in its minutes of March 8, 1955, that "a copy of

these minutes is to be sent" proceeded to mail a copy thereof to the "Department of Mental Hygiene, 1320 K Street, Sacramento, California," can we assume that such minutes so mailed constituted notice to Gordon Hamilton, as Supervisor of Guardianships of the Department of Mental Hygiene, that on page 3 of said minutes he had been appointed guardian *ad litem* of Nick W. Patapoff in the two actions, titles of which appear on page one thereof. ██ It is within the general knowledge of the public and of this court that the Supervisor of Guardianships of the Department of Mental Hygiene does not open, or supervise the handling of, mail addressed to the "Department of Mental Hygiene," and it seems to us just as probable that a copy of the minutes of the court bearing the name of a ward and patient of the department in the titles of the two cases on page one would be placed in the file of such ward, as that they would be referred to the Supervisor of Guardianships mentioned in the body of the minutes well down on page three.

██ In the instant action, from the date of the appointment of such guardian *ad litem* to the date of the first appearance of an attorney requested by such guardian to protect the ward's interests, there elapsed two years, four months and 10 days. During all this time Patapoff's hands were tied. The trial court had taken away from him his power to control his own action. The action grew out of the acts of the Department of Water and Power of the City of Los Angeles in building a dike across Patapoff's real property without his consent. The State Department of Mental Hygiene failed to do anything about protecting his interests until too late to bring the action to trial in the crowded courts of Los Angeles.

From the record on the appeal now before us, it appears that, during less than the two year statutory period between the filing and dismissal it would have been possible for Patapoff to bring the instant action to trial.

Therefore, we are convinced that this action should not have been dismissed under any of the provisions of section 583 of the Code of Civil Procedure, and that such dismissal was an abuse of discretion on the part of the trial court.

The judgment is reversed.

Fourt, J., and Lillie, J., concurred.